## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| **ALFRED PATTISON** | |
| **Plaintiff,** | |
| **v.** | **Case No. 25-cv-01866-SPM** |
| **MS. RUSH,**<br>**JOHN DOE,**<br>**CHRISTINE BROWN, and**<br>**PINCKNEYVILLE CORRECTIONAL**<br>**CENTER,** | |
| **Defendants.** | |

## <u>MEMORANDUM AND ORDER</u>

**MCGLYNN, District Judge:**

This case is before the Court for cases management purposes. Plaintiff Alfred Pattison, an inmate in the custody of the Illinois Department of Corrections who is currently incarcerated at Pinckneyville Correctional Center, initiated this civil action on October 6, 2025, pursuant to 42 U.S.C. §1983 alleging violations of his constitutional rights. In the Complaint, Plaintiff requests injunctive relief to be ordered "immediately." (Doc. 1, p. 8). The Court construes this request as a motion for a temporary restraining order and/or a preliminary injunction and will review the request now. The Court also must address the issue of exhaustion. Based on a review of the Complaint, it appears that Plaintiff has failed to exhaust his administrative remedies prior to initiating this lawsuit, as is required under the Prison Litigation Reform Act. For the reasons stated below, Plaintiff will be given thirty days to show cause as to why this matter should not be dismissed as prematurely filed.

### THE COMPLAINT

In the Complaint, Plaintiff alleges the following: At some unspecified time, Plaintiff had cataract surgery on his left eye at an outside facility, Marion Eye Center. (Doc. 1, p. 6). He had a follow-up appointment with the doctor who performed the surgery in February 2025. During the appointment, he told the doctor that he still could not see anything. The doctor informed Plaintiff that the new lens that had been placed in Plaintiff's eye during the surgery had "fallen to the bottom of [his] eye." The doctor told Plaintiff that he would need to do another procedure to replace the lens. (*Id.*).

In March 2025, instead of performing another cataract surgery, the doctor did a "scleral sutured lens surgery for IOL dislocation." (Doc. 1, p. 6). As of filing the Complaint on October 6, 2025, Plaintiff still cannot see anything out of his left eye. He describes both surgeries as "botched." (*Id.*).

Plaintiff had another appointment with the outside eye doctor in August 2025. (Doc. 1, p. 6). Plaintiff explained that his left eye hurt and that he could not see out of it. The doctor explained that Plaintiff could not see because there was a lot of "inflammation in it." The doctor wanted to give Plaintiff a steroid injection, but Wexford Insurance Co. "was leaving" and would not pay for the injection. Instead, the doctor ordered steroid drops. Plaintiff states that he does not believe that they worked. Plaintiff told the doctor that he was on the top bunk bed in his cell and that when he climbed into his bed, he felt like he would fall. The doctor told Plaintiff that because he could only see out of one eye Plaintiff's equilibrium and balance "would be way off." The doctor instructed, "absolutely no climbing." (*Id.*).

When Plaintiff returned to Pinckneyville Correctional Center from the August 2025 appointment, he had a follow-up with an eye doctor onsite. (Doc. 1, p. 7). This doctor gave Plaintiff an eyepatch and wrote him low bunk and low gallery permits and designated Plaintiff as "single

cell status." Because Plaintiff could only see with one eye, his "balance was off," and he could not defend himself from a cellmate or anyone else if needed. The medical director, Dr. Gordon, confirmed that Plaintiff needed the permits and single cell status and told Plaintiff that he would "write them up." (*Id.*).

Plaintiff stayed in his cell, assigned to the top bunkbed for four days. (Doc. 1, p. 7). After four days, he was moved to a cell "upstairs." Plaintiff told a staff member that he was not supposed to be climbing stairs. The staff member responded that Plaintiff's only permit was a low bunk permit and that the permit did not prohibit climbing stairs. Plaintiff was moved into a cell with a cellmate. (*Id.*).

Plaintiff now must climb fifteen steps "a lot of times" each day and fears his cellmate. (Doc. 1, p. 7). He states that he does not know what his cellmate will do. (*Id.*).

Plaintiff had an appointment with Dr. Gordan, and he asked Dr. Gordon about the status of his low gallery permit and single cell status. (Doc. 1, p. 7). Dr. Gordon told Plaintiff that Defendants Ms. Rush, the head of placement, and John Doe, the head of security, stated that Plaintiff only needed a low punk permit and not a low gallery permit or single cell status. Plaintiff also complained about not receiving his eye drops, and Dr. Gordon informed Plaintiff there was no order for eye drops in Plaintiff's file. (*Id.*).

Plaintiff wrote to Defendant Christine Brown about the situation and has not received a response. (Doc. 1, p. 7). Plaintiff states that he is under a lot of stress, emotional distress, and pain. He asserts that Defendants Ms. Rush, John Doe, and Christine Brown have violated his Eighth Amendment right to be free of cruel and unusual punishment. (*Id.*).

### TEMPORARY RESTRAINING ORDER AND/OR PRELIMINARY INJUNCTION

In the Complaint, Plaintiff seeks immediate injunctive relief. (Doc. 1, p. 8). He asks the Court to issue an order directing Defendants Ms. Rush and John Doe to stop overriding the

directives of his doctors and grant him a low gallery permit and single cell status. (*Id.*).

An emergency injunction, whether through a temporary restraining order or a preliminary injunction, is an "extraordinary and drastic remedy" for which there must be a "clear showing" that a plaintiff is entitled to relief. *Mazurek v. Armstrong*, 520 U.S. 968, 972 (1997) (quoting 11A Charles Alan Wright, Arthur R Miller, & Mary Kay Kane, Federal Practice and Procedure §2948 (5th ed. 1995)). The purpose of such an injunction is "to minimize the hardship to the parties pending the ultimate resolution of the lawsuit." *Faheem-El v. Klincar*, 841 F.2d 712, 717 (7th Cir. 1988). In order to obtain an emergency injunction, the plaintiff has the burden of demonstrating:

- a reasonable likelihood of success on the merits;
- no adequate remedy at law; and
- irreparable harm absent the injunction.

*Planned Parenthood v. Comm'r of Ind. State Dep't Health*, 699 F.3d 962, 972 (7th Cir. 2012). All three requirements must be satisfied before the Court can consider whether preliminary injunctive relief is warranted. Plaintiff has not met this high burden.

First, Plaintiff has not demonstrated that he is likely to succeed on the merits of his Eighth Amendment claim against Ms. Rush and John Doe. The Eighth Amendment requires prison officials to "take reasonable measures to guarantee the safety of the inmates." *See Balsewicz v. Pawlyk*, 963 F.3d 650, 654 (7th Cir. 2020) (quoting *Farmer v. Brennan,* 511 U.S. 825, 832 (1994)). "Prison officials violate the Eighth Amendment's proscription against cruel and unusual punishment when they display deliberate indifference to serious medical needs of prisoners." *Hayes v. Snyder*, 546 F.3d 516, 522 (7th Cir. 2008).

Plaintiff does not provide any information on how he will succeed on his Eighth Amendment claim against Ms. Rush and John Doe. While Plaintiff is not required to "show that [he] definitely will win the case…a mere possibility of success is not enough," and he must make "[a] strong showing that [he] is likely to succeed on the merits." *Ill. Republican Party v. Pritzker*,

Page 4 of 8

973 F.3d 760, 763 (7th Cir. 2020). A "strong showing" includes a "demonstration of how the applicant proposes to prove the key elements of its case." *Id.* at 763 (quotation marks omitted). Relying on the allegations in the Complaint is not sufficient. In assessing whether a request for emergency injunctive relief has adequately demonstrated a reasonable likelihood of success on the merits, the Court does not simply "accept [Plaintiff's] allegations as true, nor do[es] [it] give him the benefit of all reasonable inferences in his favor." *Doe v. Univ. of S. Indiana*, 43 F.4th 784, 791 (7th Cir. 2022). Instead, the Court must assess the merits as "they are likely to be decided after more complete discovery and litigation." *Id.*

Assuming Plaintiff suffers from a serious medical condition, impaired vision in his left eye, and even assuming that Defendants were aware of his recommended permits and single cell status, he does not offer any evidence that Defendants had knowledge of a serious medical condition or a substantial risk to his health and safety and then disregarded that risk. "An officer's refusal to comply with an inmate's medical permit does not automatically establish the subjective element of Eighth Amendment claims." *Salley v. Parker,* No. 18-cv-5700, 2022 WL 2952818, at *10 (N.D. Ill. July 26, 2022). "As other courts have noted, a medical permit 'might call for treatment that is beyond what is required by the Eighth Amendment.'" *Id.* (quoting *Everett v. Baldwin*, No. 13 C 04697, 2016 WL 8711476, at *7 n.6 (N.D. Ill. 2016)). Because it is not clear what evidence Plaintiff plans to present to demonstrate that Defendants had actual knowledge that having him climb the stairs and housing him with his cellmate posed a risk to him and then acted with criminal recklessness, *see Petties v. Carter,* 836 F. 3d 722, 728 (7th Cir. 2016) ("[e]ven objective recklessness – failing to act in the face of an unjustifiably high risk that is so obvious that is *should* be known – is insufficient to make out a claim"), Plaintiff has not met the burden of showing that he has a likelihood of succeeding on the merits of his Eighth Amendment claim. *See Ill. Republican Party*, 973 F. 3d at 762.

Second, Plaintiff has also failed to demonstrate that he will likely suffer irreparable harm without the Court's involvement. There is no evidence that he is in immediate danger of harm. Plaintiff claims that he is currently housed with another inmate, and his vision impairment in his left eye means he cannot defend himself from other inmates if needed. He is scared what his cellmate "might do." (Doc. 1, p. 7). Plaintiff, however, does not state that his cellmate has threatened or attempted to harm him in anyway. At this point, Plaintiff's fear of future danger at the hands of his cellmate is speculation. As the Seventh Circuit has stated, "[i]ssuing a preliminary injunction based only on a possibility of irreparable harm is inconsistent with our characterization of injunctive relief as an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief." *Orr v. Shicker,* 953 F. 3d 490, 502 (7th Cir. 2020). *See also Mich. v. U.S. Army Corps of Eng'r,* 667 F. 3d 765, 788 (7th Cir. 2011) ("there must be more than a mere possibility that the harm will come to pass").

As to his daily use of stairs, Plaintiff states that he becomes lightheaded, dizzy, and feels like he is going to fall when climbing the stairs. (Doc. 1, p. 7). But he does not describe seeking and being denied assistance by staff members when using the stairs nor the condition of the stairs themselves, such as the presence of a railing for stability. It is also not clear why he is using the stairs "a lot of times a day," and whether this frequent use is voluntary or can be avoided. (*Id.*). Thus, Plaintiff has not demonstrated that an "irreparable injury is *likely* in the absence" of Court involvement. *Mays v. Dart*, 974 F. 3d 810, 822 (7th Cir. 2020).

Because Plaintiff has failed to demonstrate a reasonable likelihood of success on the merits of his claim and that he will likely suffer irreparable harm without the issuance of emergency injunctive relief, his request contained in the Complaint is denied.

### EXHAUSTION OF ADMINISTRATIVE REMEDIES

The Prison Litigation Reform Act (PLRA) provides that a prisoner may not bring a lawsuit

about prison conditions unless and until he has exhausted all available administrative remedies. 42 U.S.C. § 1997e(a); *Pavey v. Conley*, 544 F.3d 739, 740 (7th Cir. 2008). For a prisoner to properly exhaust his administrative remedies, the prisoner must "file complaints and appeals in the place, and at the time, the prison's administrative rules require." *Pozo v. McCaughtry*, 286 F.3d 1022, 1025 (7th Cir. 2002). "[A] prisoner who does not properly take each step within the administrative process has failed to exhaust state remedies." *Id.* at 1024.

Although it is generally appropriate to wait for a defendant to raise an affirmative defense, the Seventh Circuit has noted that "when the existence of a valid affirmative defense is so plain from the face of the complaint that the suit can be regarded as frivolous, the district judge need not wait for an answer before dismissing the suit." *Walker v. Thompson*, 288 F.3d 1005, 1009 (7th Cir. 2002). A plaintiff can plead himself out of court, and if he includes allegations "that show he isn't entitled to a judgment, he's out of luck." *Early v. Bankers Life and Cas. Co.*, 959 F.2d 75, 79 (7th Cir. 1992) (citations omitted). A plaintiff need not anticipate or overcome an affirmative defense like exhaustion, but if he alleges facts sufficient to establish that an affirmative defense applies, "the district court may dismiss the complaint on that ground." *O'Gorman v. City of Chicago*, 777 F.3d 885, 889 (7th Cir. 2015).

In the Complaint, Plaintiff claims that at some point in August 2025, the eye doctor at Pinckneyville Correctional Center wrote him medical permits directing that he be housed in a cell on a low gallery and assigned to a low bunkbed. The doctor also designated Plaintiff as needing to be housed in a single cell. These permits and Plaintiff's single cell status were confirmed by Dr. Gordan but not fully honored by prison staff. Plaintiff was moved to a cell with a cellmate and in a location which requires the use of stairs daily. At some point thereafter, Plaintiff wrote a grievance about his housing situation. (Doc. 1, p. 4). He states that the grievance was received and deemed an emergency by the chief administrative officer for expedited review. Plaintiff asserts

that the grievance was answered by institutional staff, and he then sent the grievance to Springfield, Illinois to be reviewed by the Administrative Review Board. As of filing the Complaint, he had not received a response from the Administrative Review Board. (*Id.*).

Plaintiff signed the Complaint on October 1, 2025, and it was received by the Court on October 6, 2025. Given that it has only been at most two months since Plaintiff initiated the grievance process and by his own admission that he has not received a response from the Administrative Review Board on his grievance, the Court finds it highly unlikely that Plaintiff has exhausted his claims prior to filing his Complaint. Therefore, Plaintiff must file a response within thirty days showing cause as to why this matter should not be dismissed as prematurely filed.

DISPOSITION

For the reasons stated above, the request for a temporary restraining order and/or preliminary injunction is **DENIED**. (Doc. 1, p. 8).

Plaintiff is **ORDERED** to show cause about the exhaustion of his claims against Defendants. Plaintiff must file his response with the Court in written format on or before **November 21, 2025**. Plaintiff's failure to respond to this Order will result in dismissal of this case.

**IT IS SO ORDERED.**

**DATED: October 23, 2025**

 s/Stephen P. McGlynn
**STEPHEN P. MCGLYNN**
**United States District Judge**